| PATRICIA GIBBS | * | NO. 2023-CA-0599 |
| ALEXANDER LAGARDE | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| JEAN PAUL LAGARDE | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-05440, DIVISION "I-14"
Honorable Lori Jupiter, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Karen K. Herman)

**BROWN, J., CONCURS WITH REASONS.**

Gordon J. Kuehl
HOFFMAN NGUYEN & KUEHL, L.L.C.
643 Magazine Street
Suite 401
New Orleans, LA 70130

　　　COUNSEL FOR PLAINTIFF/APPELLANT

Marc D. Winsberg
Sara G. Ford
WINSBERG HEIDINGSFELDER & GAMBLE, LLC
650 Poydras Street
Suite 2050
New Orleans, LA 70130

　　　COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**June 5, 2024**

RLB
KKH

This appeal stems from a dismissal of a petition for protection for Patricia Lagarde ("Ms. Lagarde") and her minor child, E.L., against her former husband, Jean Paul Lagarde ("Mr. Lagarde").

**FACTUAL BACKGROUND**

On June 21, 2021, Ms. Lagarde filed a petition for protection from abuse on behalf of herself and E.L. The petition alleges that Mr. Lagarde pinned Ms. Lagarde down into the sofa at the family home and viciously struck her in the face with an open hand. The petition also alleged that Mr. Lagarde had previously slapped, choked, shoved, threatened bodily harm, and committed several forms of emotional and financial abuse since their marriage in 2016.

A temporary restraining order was issued on June 28, 2021, in favor of Ms. Lagarde and E.L. and against Mr. Lagarde, prohibiting him from abusing or harassing Ms. Lagarde and the minor child, contacting them, going within one hundred (100) yards of their home, employment, or school, granting Ms. Lagarde exclusive use of the family home, and temporary custody of the minor child.

The couple were married in 2016. Ms. Lagarde alleges a history of abuse from 2016 to 2021, mainly stemming from Mr. Lagarde pressuring her for sexual

acts. Ms. Lagarde testified that on multiple occasions in July of 2016, Mr. Lagarde propositioned her for sex. When Ms. Lagarde rejected her husband's advances, she allegedly threw water in his face. Mr. Lagarde retaliated by allegedly tackling and strangling her.

Later that same year, Mr. Lagarde struck her on her backside, leaving a welt. In 2018, he verbally harassed her after pressuring her for sex soon after she had just had their first child and she was not ready. On Christmas of the following year, an altercation arose out of an argument about opening presents which led Mr. Lagarde to forcibly grab their child from her arms and have an emotional breakdown. Nearly a year later, the Lagarde's were in an argument and Ms. Lagarde contends that Mr. Lagarde grabbed her by the arm and pushed her down the hallway and then kicked their child. Mr. Lagarde contends that this altercation began by Ms. Lagarde hitting and punching him in the living room. These events and the incident in June of 2021 led to the petition for protection.

**PROCEDURAL HISTORY**

Ms. Lagarde filed her petition for protection from abuse pro se on June 25, 2021. A temporary restraining order was then issued on June 28, 2021, with the initial hearing on the petition for protection set for July 16, 2021. During this suit, Ms. Lagarde also filed for divorce and sole custody of E.L.[1]

On July 2, 2021, Mr. Lagarde filed a petition for protection from abuse claiming that he was a victim in the June 16, 2021 incident and alleges an "angry outburst" from Ms. Lagarde. He was also granted a temporary restraining order.

---

[1] The parties physically separated on or about June 25, 2021 and the rule for divorce was filed on October 7, 2022.

The July 16 hearing was rescheduled to September 2, 2021, with both restraining orders staying in effect.

Both parties also filed supplemental petitions for protection from abuse before the hearing. Mr. Lagarde filed on August 25[2] and Ms. Lagarde filed on August 27.[3] The September 2 trial date was delayed by Hurricane Ida, and on November 10, 2021, Mr. Lagarde filed a motion to reset the hearing requesting a status conference on November 19, 2021 and a trial date of March 15, 2022.

On March 15, 2022, the parties appeared for trial on the merits, however, the trial court first took up Mr. Lagarde's March 11, 2022, Motion in Limine to Exclude Testimony of Dr. Katherine Lawing. Considering the motion and the argument of counsel, the trial court continued the March 15, 2022, hearing to April 1, 2022, to give Mr. Lagarde the time he requested to pursue discovery from Dr. Lawing and/or take her deposition. After the April 1, 2022 date, the trial was continued to June 24, 2022. The case was not tried until November 9, 2022 when the trial court ruled orally from the bench. Ms. Lagarde requested written reasons, but the trial court never issued any.

**ANALYSIS**

The only assignment of error brought on appeal is that the trial court abused its discretion and committed error in not finding that Ms. Lagarde proved the allegations in her Petition for Protection from Abuse by a preponderance of the evidence.

---

[2] He claims that Ms. Lagarde threatened him with bodily harm, threw water in his face, threw a cell phone at him, and destroyed his property.
[3] She claims that Mr. Lagarde grabbed her arm and shoved her down the hallway, trampling the minor child in the process. When asked to leave, he refused to leave.

In assessing the record evidence for abuse, the Fourth Circuit Court of Appeal and La. R.S. 46:2135(A) dictate that the court shall consider any and all past history of abuse, or threats thereof, in determining the existence of an immediate and present danger of abuse. La. R.S. 46:2135(A). There is no requirement that the abuse itself be recent, immediate, recent, or present." *Petite v. Hinds*, 2023 WL 7203699, *8, (La. App. 4 Cir. 10/31/23), modified on rehearing on other grounds, WL 8368321 (La. App. 4 Cir. 12/04/23); *Carrie v. Jones*, 334 So.3d 834, 842 (La. App. 4 Cir. 01/21/22).

Under La. R.S. 46:2132(C), " 'Domestic abuse' includes but is not limited to physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another."

In *Carrie*, this Court has held that the petitioner needs to show that the abuse happened by a preponderance of the evidence. "In accordance with LA. R.S. 46:2135 and 46:2136, the issuance of a protection order requires that there be 'good cause shown' [by the petitioner],"[4] and "the appellate court must review the record in its entirety" to determine whether "a reasonable factual basis" exists for the trial court's findings or, instead, "the factfinder [was] clearly wrong or manifestly erroneous."[5] "In matters of credibility, an appellate court must give great deference to the findings of the trier-of-fact." *Franz v. First Bank Sys., Inc.*, 03-0448, p. 9 (La. App. 4 Cir. 2/11/04), 868 So.2d 155, 162 (citing *Resell y. ESCO. 549* So.2d 840 (La. 1989).

---

[4] *Id.*
[5] *Id.*

An appellate court should apply the "abuse of discretion" standard when reviewing a trial court's issuance of a protective order under the Domestic Abuse Assistance Act. *Munger*, 2016-0778 p. 7, 224 So.3d at 449. An abuse of discretion occurs if the trial court was arbitrary or capricious in its decision. *Juneau v. Strawmyer,* 1994-0903, p. 11 (La. App. 4 Cir. 12/15/94), 647 So.2d 1294. "'Capricious' means the entry of judgment with no substantial evidence to support its conclusion or a conclusion contrary to substantiated competent evidence. *Id.* 'Arbitrary' implies a disregard of evidence or the proper weight thereof." *Id.*

Ms. Lagarde bases her argument on the temporary restraining order that Judge Jupiter found good cause to grant, as well as, the scattered nature of the trial.[6] She makes reference to the dissent in *Petite* where the dates of the trial were spread out over the course of multiple months calling into question whether a trier of fact could maintain the necessary information for that extended period. Ms. Lagarde called multiple witnesses and also used photographic evidence to prove the abuse. She also brought in Dr. Katheryn Lawing, an expert in forensic psychology to corroborate her allegations.[7]

Ms. Lagarde further contends that it would be impossible to apply the abuse of discretion standard since Judge Jupiter did not make any findings of fact and gave no reasons for judgment.[8] She then filed a request for written findings of fact and reasons for judgment and Judge Jupiter issued no written findings of fact, but gave oral reasons as follows:

> At this time I do not find that Miss Lagarde met her abuse allegations as alleged in the Petition for Protection from Abuse by the

---

[6] Day 1 occurred on April 1, 2022; Day 2 occurred on June 24, 2022; and Day 3 occurred on November 9, 2022.

[7] Dr. Lawing has done extensive research on violence risk.

[8] Judge Jupiter entered a conclusory denial of Ms. Lagarde's petition for protection.

> preponderance of the evidence, coupled with the parties testimony, the evidence and testimony of Dr. Lawing.

Contending that the basis of Ms. Lagarde's claims are false, Mr. Lagarde argues the testimony from Dr. Lawing was just a "reiteration of Appellant's allegations." Dr. Lawing completed multiple psychological tests over a series of interviews with Ms. Lagarde. She mainly used a "malingering test"[9] and a few other tests that are generally accepted in the field of psychology and came to the conclusion that Ms. Lagarde was a victim of intimate partner violence "to a reasonable degree of psychological certainty." More specifically, Dr. Lawing described Ms. Lagarde's account of the June 25, 2021 incident, as well as, body cam footage from the police after the incident. Dr. Lawing testified, "She was in a state of shock. She was alternating between crying and being upset to being in, you know, loss of words kind of a thousand yards stare, her focus was impaired. Those were my main observations of her." Dr. Lawing opined that those observations were consistent with someone who had been abused. She had no contact with Mr. Lagarde through the testing process.

In Mr. Lagarde's testimony, he describes multiple instances of Ms. Lagarde being abusive. He claims he was kicked and hit and he fell on top of her and was trying to protect himself from getting hit more. Mr. Lagarde also claims that Ms. Lagarde threw a glass of water into his face which turned into an altercation. Mr. Lagarde's account of the altercation was confirmed by the testimony of Dominique Falcon, a friend of Ms. Lagarde.

Mr. Lagarde argues that E.L. was safe with him around. Trial testimony showed that E.L. was left in Mr. Lagarde's care on multiple occasions when Ms.

---

[9] This test whether the person is embellishing what had happened.

Lagarde left the house for work or other reasons. E.L. was also left with Mr. Lagarde immediately after the incident on June 16, 2021.

After all parties had testified, Judge Jupiter stated, "At this time I do not find that Miss Lagarde met her abuse allegations as alleged in the Petition for Protection From Abuse by the preponderance of the evidence, coupled with the parties testimony, the evidence and testimony of Doctor Lawing."

Looking at the testimony given as a whole by all parties, we do not believe that the trial court was clearly wrong or manifestly erroneous in denying the protective order. Therefore, we affirm the trial court's denial of the protective order.

**AFFIRMED**